## In re ARNY GRUNDYSEN, Sheriff of Polk County.

### Argued May 18, 1893. Decided June 1, 1893.

**Redemption Money Paid to a Sheriff is Received by Virtue of His Office.**

Money paid to a sheriff to redeem land from a foreclosure sale is money received by him "by virtue of his office," within the meaning of 1878 G. S. ch. 8, § 198, as amended in 1885.

**A Statutory Foreclosure not Embraced in 1878, G. S. ch. 88, § 9.**

The foreclosure of a mortgage under a power of sale is not "a special proceeding," within the meaning of 1878 G. S. ch. 88, § 9.

**Authority of Attorney Employed to Foreclose under a Power in a Mortgage.**

The mere employment of an attorney to foreclose a mortgage does not give him authority to receive from the sheriff money paid after foreclosure to redeem the property from a sale to the mortgagee.

Appeal by W. H. Williams from an order of the District Court of Polk County, *Frank Ives*, J., made January 14, 1893.

Eli Lariviere and wife mortgaged to Williams two hundred acres of land in Polk county. When the debt fell due it was not paid, and Williams employed Messrs. White, Reynolds & Schmidt, attorneys at law of Duluth, to foreclose the mortgage by advertisement under the power of sale therein. The foreclosure sale was made November 9, 1891, by Arny Grundysen, Sheriff of Polk County. Williams bid and became the purchaser for $901.84, and received the sheriff's certificate. The owner redeemed the land November 7, 1892, by paying to the sheriff the money and interest. White, Reynolds & Schmidt demanded the money of the sheriff, but he refused to pay it over to them, unless they produced some authority from Williams to receive it. They, on affidavit of the facts, obtained from Judge *Ives* an order that the sheriff show cause before the court at Moorhead on January 3, 1893, why he should not pay over the money to them with twenty per centum thereon as damages for failure to pay on demand. The sheriff appeared and showed that he had deposited the money in First National Bank of Crookston the day of the redemption, and had it ready at all times since to pay over to Williams on demand, or to any one having authority from him to receive it, but admitted that he refused to pay it to White, Reynolds & Schmidt because they produced no authority from Williams to receive it. The order was discharged with costs, and they brought this appeal in the name of Williams.

*White, Reynolds & Schmidt*, for appellant, cited *Coykendall* v. *Way*, 29 Minn. 162; *Breuer* v. *Elder*, 33 Minn. 147; *Kumler* v. *Brandenburg*, 39 Minn. 59; *Jenney* v. *Delesdernier*, 20 Me. 183; *Gordon* v. *Coolidge*, 1 Sumn. 537.

*A. A. Miller*, for respondent.

MITCHELL, J. This was a summary proceeding, under 1878 G. S. ch. 8, § 198, as amended by Laws 1885, ch. 74, against the sheriff

of Polk county, to compel him to pay over certain moneys received by him by virtue of his office, together with twenty per cent. damages and costs.

The material facts are that the law firm of White, Reynolds & Schmidt, of Duluth, foreclosed by advertisement for Williams, a resident of New York, a mortgage on certain real estate in Polk county, their names appearing as his attorneys in the printed notice of sale, and they, as such, attending to the foreclosure proceedings throughout. At the sale the property was bid off in the name of Williams, the mortgagee, to whom the usual certificate was executed by the sheriff who conducted the sale. Just before the expiration of one year from the date of sale, the land was redeemed, the redemptioner, as authorized by statute, paying the money to the sheriff. Thereupon White, Reynolds & Schmidt demanded the money, as attorneys for Williams. The sheriff refused to pay it over unless and until they produced an order from Williams for the money, or some other evidence of their authority from him to receive it. This they declined to do, resting their right and authority to demand this redemption money upon their employment by Williams to foreclose the mortgage. Upon the refusal of the sheriff to comply with their demand, these proceedings were commenced.

We have no doubt that this money was received by the sheriff "by virtue of his office," within the meaning of the statute. The amendment of 1885 was unquestionably passed to cover, among others, just such cases.

The authority of White, Reynolds & Schmidt to demand and receive this money is put on two grounds. The first is under 1878 G. S. ch. 88, § 9, which provides that an attorney has authority "to receive money claimed by his client in an action or *special proceeding*, during the pendency thereof, or within two years after judgment, and upon the payment thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment."

The contention is that the foreclosure of a mortgage under a power of sale is "a special proceeding," within the meaning of this statute. If the phrase "special proceeding" could be dissected, and lexicographers' definitions of each word separately adopted, it could be made to include almost anything. But in our statutes, in

common with all the reformed codes of procedure, it has a well-understood meaning. It is a generic term for all civil remedies in courts of justice which are not ordinary actions. It always has reference to a proceeding in court which may culminate in a judgment; and it is evidently in this sense in which it is used in this statute. It does not include a foreclosure under a power of sale, which is a proceeding wholly *in pais*.

The case therefore resolves itself into the question whether an employment of an attorney to foreclose a mortgage in this manner confers authority to receive the redemption money, where the property is subsequently redeemed from a sale to the mortgagee. This is to be determined by the general rules of the law of principal and agent. Of course, authority to do a particular thing carries with it every power necessary to accomplish the object; in other words, the power to use all appropriate means necessary to accomplish the desired end. As in every other case, the intention of the parties is the cardinal test. The extent of the implied authority depends on the nature of the business to be transacted; but implied authority is never to be extended beyond its legitimate scope. It is also a cardinal rule of the law of agency that the agency is always terminated by the accomplishment of its object; when it is created for the purpose of performing some specific act or acts, the agency will be terminated by the accomplishment of the purpose which called it into being. When an attorney is employed to "foreclose" a mortgage, we think the common understanding is that this refers to the proceedings which culminate in the sale of the property, and the preparation and record of the papers evidencing that sale. If it should happen, which it rarely does, that another party buys at the sale, we think that the authority to foreclose would fairly imply authority to receive the money from the purchaser. But if, as is usually the case, the property is bid in by the mortgagee, we think that the agency of one employed to foreclose would have accomplished its object and be terminated when the sale proceedings were completed, and the proper evidences of sale and muniments of title under it were prepared or procured; and that a mere employment to foreclose would not confer authority, in case of redemption or attempted redemption from the sale, to pass upon the validity or sufficiency of the redemption, or to collect

the redemption money from the sheriff.    Hence we think the sheriff
had the legal right, if he insisted on it, to require evidence of the au-
thority of White, Reynolds & Schmidt to receive the money.

It is suggested that, in any event, the court should have in these
proceedings, which were instituted by Williams himself, ordered the
sheriff to pay over the money.    But we do not think a party has a
right to use these summary proceedings for any such purpose.
They were designed to apply exclusively to sheriffs who were pre-
viously in default in the performance of their legal duty.

Order affirmed.

VANDERBURGH, J., absent, took no part.

(Opinion published 55 N. W. Rep. 557.)